In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00006-CR


______________________________




DAMIAN WAYNE HENNINGTON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 01-F-0119-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 Damian Wayne Hennington was tried before a jury and found guilty of felony possession of
marihuana. He was sentenced to four years' imprisonment and assessed a fine of $5,000.00. He now
appeals.

 On October 4, 2000, Gary Brown, an officer with the Texarkana, Texas, Police Department,
stopped the driver of a 1992 Oldsmobile minivan for failing to signal intent to turn not less than the
last 100 feet before the turn. Eventually, Hennington gave consent to search his vehicle and signed
the consent form. Brown discovered a black duffel bag behind the back seat with 27.4 pounds of
marihuana in a plastic bag surrounded by fabric softener. Brown did not find any other controlled
substances or drug paraphernalia in the van. Possession of marihuana in this amount is a second-degree felony subject to imprisonment of not more than twenty years or less than two years. Tex.
Health & Safety Code Ann. § 481.121 (Vernon 2003); Tex. Pen. Code Ann. § 12.33 (Vernon
2003). 

 Hennington asserts four points, alleging as error: (1) the denial of his motion to suppress,
(2) finding his consent to the search was voluntary in light of the illegal detention, (3) that the
evidence was legally and factually insufficient, and (4) that the accomplice witness testimony was
not sufficiently corroborated. We will address Hennington's third point of error before the fourth
point of error, since it should be decided before considering factual and legal sufficiency. 

 In his first point of error, Hennington contends the motion to suppress should have been
granted because the purpose of the traffic stop had concluded and there were no articulable facts to
support reasonable suspicion justifying further detention and search. 

 A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of
discretion standard. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). The general
rule is that an appellate court should afford almost total deference to a trial court's determination of
the historical facts supported by the record, especially when the trial court's fact-findings are based
on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997); Villarreal, 935 S.W.2d at 138. Where, as here, a trial court makes no explicit findings of
historical fact, the appellate court should view the evidence in the light most favorable to the trial
court's ruling and assume the trial court made implicit findings of fact. Carmouche v. State, 10
S.W.3d 323, 328 (Tex. Crim. App. 2000). When the facts are undisputed and the court is presented
with a pure question of law, de novo review is proper. Oles v. State, 993 S.W.2d 103, 106 (Tex.
Crim. App. 1999).

 The search of Hennington's vehicle occurred without a warrant. Brown had stopped
Hennington for failure to signal a turn. See Tex. Transp. Code Ann. § 545.104 (Vernon 1999). 
A law enforcement officer may lawfully stop and detain a person for a traffic violation. Garcia v.
State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). "A routine traffic stop resembles an
investigative detention." State v. Cardenas, 36 S.W.3d 243, 246 (Tex. App.-Houston [1st Dist.]
2001, pet. ref'd). "An investigative detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop." Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997)
(quoting Lopez v. State, 663 S.W.2d 587, 589 (Tex. App.-Houston [1st Dist.] 1983, pet. ref'd)). 
"Additionally, Texas Courts recognize that investigative detentions become unreasonable when they
are not reasonably related in scope to the circumstances which justified the interference in the first
place." Davis, 947 S.W.2d at 244. After an officer concludes the investigation of the traffic
violation, the officer cannot continue to detain or question the defendant unless the officer has
reasonable suspicion to believe another offense is being committed. Davis, 947 S.W.2d at 243;
Cardenas, 36 S.W.3d at 246. 

 Courts recognize that during a traffic stop the officer has a right to check for outstanding
warrants and to examine the detainee's driver's license, insurance, and identification. Powell v. State,
5 S.W.3d 369, 377 (Tex. App.-Texarkana 1999, pet. ref'd). The law enforcement officer may ask
about the driver's destination and purpose for traveling during a valid detention, but the detainee is
not required to answer. Cardenas, 36 S.W.3d at 246; see Powell, 5 S.W.3d at 377. Before 
requesting consent to search the vehicle, Brown had already ascertained Hennington had proper
registration, insurance, and no outstanding warrants. He had also informed Hennington he would
be receiving a warning for the traffic violation. At this point, the purpose of the detention for the
traffic violation had ended. However, if an officer develops reasonable suspicion before the officer
concludes his initial investigation, further detention is justified. Powell, 5 S.W.3d at 379.

 Further detention for investigation beyond the traffic violation requires Brown to have a
reasonable suspicion of further criminal activity. The United States Supreme Court in Terry v. Ohio
established a two-pronged test for investigative detentions. To determine the reasonableness of an
investigative detention, the court must inquire: "(1) whether the officer's action was justified at its
inception; and, (2) whether it was reasonably related in scope to the circumstances which justified
the interference in the first place." Davis, 947 S.W.2d at 242; see Terry v. Ohio, 392 U.S. 1, 19-20
(1968). 

 "Under the first prong, 'the police officer must be able to point to specific and articulable
facts which, taken together with rational inferences from those facts, reasonably warrant that
intrusion.'" Davis, 947 S.W.2d at 242 (citing Terry, 392 U.S. at 21). The specific articulable facts,
along with rational inferences from those facts, must allow the officer to reasonably conclude the
person detained actually is, has been, or soon will be engaged in criminal activity. United States v.
Sokolow, 490 U.S. 1, 10 (1989). The facts established at the suppression hearing are as follows. (1) 
Brown observed that Hennington appeared nervous. Hennington's hands were shaking, and he
avoided eye contact. In addition, the passenger's and Hennington's stories conflicted. (2) Brown was
aware Hennington was coming from a "source city." Further, Brown could detect a strong odor of
marihuana. A law enforcement officer may rely on information, obtained in the course of the
officer's contact with a citizen, in justifying further detention. Ortiz v. State, 930 S.W.2d 849, 856
(Tex. App.-Tyler 1996, no pet.). 

 Hennington argues Brown did not have sufficient specific articulable facts to justify further
detention. In support of this, he cites McQuarters v. State, 58 S.W.3d 250 (Tex. App.-Fort Worth
2001, pet. ref'd), which held that nervousness alone is not sufficient to create reasonable suspicion. 
Hennington also cites Davis, which held that nervousness, a prior drug conviction by the passenger,
inconsistencies between the driver's and passenger's stories, and attire that was incompatible for the
stated purpose of the trip were not sufficient to give rise to a reasonable suspicion. Davis, 947
S.W.2d at 245-46. Davis and McQuarters are distinguishable from the current case because, here,
Brown detected the odor of marihuana. Davis specifically relied on the fact there was no odor of
drugs emanating from the vehicle. Id. at 246. The odor of marihuana, by itself, is sufficient to
develop reasonable suspicion that criminal activity is occurring. (3) Because the odor of marihuana in
addition to the other specific articulable facts is sufficient to create reasonable suspicion, Brown
could lawfully detain Hennington in order to investigate.

 The second prong of Terry requires the scope of the detention "like any other search, must
be strictly circumscribed by the exigencies which justify its initiation." Davis, 947 S.W.2d at 243
(quoting Terry, 392 U.S. at 25-26). The officer, however, must diligently pursue a means of
investigation that lasts no longer than is necessary and the search should be by the "least intrusive
means reasonably available." Id. at 245. Brown had reasonable suspicion that criminal drug activity
was occurring and limited his investigation to the drug activity. A search conducted with effective
consent is reasonable despite the absence of a search warrant or even probable cause. Jackson v.
State, 968 S.W.2d 495, 498 (Tex. App.-Texarkana 1998, pet. ref'd). Assuming Hennington freely
and voluntarily consented to the search, the search was lawful.

 In his second point of error, Hennington contends he did not voluntarily grant consent to
search. (4) The standard of review for consent to search questions is whether the trial court abused its
discretion in finding the consent sufficient. Id. To be valid, consent to search must be given freely
and voluntarily. (5) Appellate courts should view the evidence in the light most favorable to the ruling
of the trial court. See Sandoval v. State, 860 S.W.2d 255, 257 (Tex. App.-Houston [1st Dist.] 1993,
pet. ref'd). 

 Hennington alleges that, when he asked what would happen if he denied consent, Brown told
him he would keep him there all night and threatened to get his drug dog out of the car. No direct
evidence of this statement was introduced at the suppression hearing. Hennington testified at trial
that Brown told him, "We will be here all night." At the suppression hearing, Brown denied saying,
"I'm going to keep you here all night." Officer Scott Sartor, who arrived before the search but after
the initial detention, testified he could not recall whether the statement was made. Brown testified
that Hennington was not handcuffed or placed under arrest until after he found the drugs. The trial
court found Hennington gave consent freely and voluntarily. When the evidence is conflicting, the
trial court determines the credibility of the witnesses. Since appellate courts should grant almost
total deference to the trial court's determination as to the credibility of a witness, we cannot find the
trial court abused its discretion in finding Hennington's consent was voluntary.

 Hennington asserts, as his fourth point of error, that the accomplice witness testimony lacked
sufficient corroboration. Hennington argues that the nonaccomplice evidence is not sufficient to
connect him to the crime. He contends the only corroborating evidence was his presence at the
scene, which is insufficient. The State argues that Hennington's nervousness, the odor of marihuana,
Hennington's knowledge of the drug trade, and his presence at the scene as the driver of the vehicle
are sufficient "suspicious circumstances" to corroborate the accomplice witness testimony. 

 "The test for weighing the sufficiency of corroborative evidence is to eliminate from
consideration the testimony of the accomplice witness and then examine the testimony of other
witnesses to ascertain if there is evidence which tends to connect the accused with the commission
of the offense." Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) (citing Reed v.
State, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988)); see Edwards v. State, 427 S.W.2d 629, 632
(Tex. Crim. App. 1968). The nonaccomplice evidence does not need to prove all the elements of
the alleged offense. Hernandez, 939 S.W.2d at 176; Underwood v. State, 967 S.W.2d 925, 928 (Tex.
App.-Beaumont 1998, pet. ref'd). The nonaccomplice evidence does not have to directly link the
accused to the commission of the offense. Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App.
1993); Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). The accomplice witness rule
only requires that there be some nonaccomplice evidence which "tends to connect" the accused to
the commission of the offense alleged in the indictment. Hernandez, 939 S.W.2d at 176.

 Mere presence of a defendant at the scene of the crime is insufficient to corroborate
accomplice witness testimony. Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992); Beathard
v. State, 767 S.W.2d 423, 428 (Tex. Crim. App. 1989); Howard v. State, 972 S.W.2d 121, 127 (Tex.
App.-Austin 1998, no pet.). Hennington cites Rios as support for the proposition that his presence
at the scene is insufficient to corroborate accomplice witness testimony. See Rios v. State, 982
S.W.2d 558 (Tex. App.-San Antonio 1998, pet. ref'd). In Rios, the San Antonio Court of Appeals
held the State presented insufficient evidence "tending to connect" the crime to a passenger present
in a car which contained marihuana. Id. at 561 (holding the glance the driver gave to the passenger
not evidence of nervous or furtive behavior on the part of the passenger). Rios stands for the
proposition that, absent any other "suspicious circumstances," mere presence at the scene is
insufficient to corroborate accomplice witness testimony. The current situation can be distinguished
because "suspicious circumstances" do exist. 

 As the Texas Court of Criminal Appeals stated in Brown, "Proof that the accused was at or
near the scene of the crime at or about the time of its commission, when coupled with other
suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient
corroboration to support a conviction." Brown v. State, 672 S.W.2d 487, 489 (Tex. Crim. App.
1984). Cumulative circumstantial evidence of "suspicious circumstances" can be sufficient evidence
which "tends to connect" a defendant to the alleged offense, even if none of the circumstances would
be sufficient individually. (6) 

 Sufficient "suspicious circumstances" exist to corroborate the accomplice witness testimony. 
A strong odor of marihuana emanated from the vehicle. Hennington's nervous behavior created
another suspicious circumstance. Hennington's hands were shaking, and he avoided eye contact. 
Courts have held that nervous and furtive behavior can rise to the level of a "suspicious
circumstance." (7) In addition, Hennington was the driver of and had control over, if not actual
ownership of, the vehicle. (8) Texas courts have recognized that the status of being the driver may be
a "suspicious circumstance." (9) Corroborating testimony is not required to directly link the defendant
to the crime or to prove each element of the offense, e.g., his or her knowledge of the marihuana. 
See Hernandez, 939 S.W.2d at 176; Underwood, 967 S.W.2d at 928. We hold that the odor of
marihuana, Hennington's nervousness, and the fact that Hennington was the driver and had control
over the vehicle create sufficient "suspicious circumstances" which, combined with his presence at
the scene of the crime, are sufficient to connect him with the crime. Since nonaccomplice evidence
exists which tends to connect Hennington to the crime, the accomplice witness testimony was
sufficiently corroborated.

 In his third point of error, Hennington contends the evidence is legally and factually
insufficient to support his conviction. He argues that the evidence was insufficient to prove he
intentionally and knowingly possessed a controlled substance. 

 In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on this Court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 

 In contrast to legal sufficiency, a factual sufficiency review dictates that the evidence be
viewed in a neutral light, favoring neither party. Johnson, 23 S.W.3d at 7; see Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996). In determining the factual sufficiency of the evidence to
establish the elements of the offense, we view all the evidence in a neutral light and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong,
or so weak as to be clearly wrong or manifestly unjust. Johnson, 23 S.W.3d at 7; Clewis, 922
S.W.2d at 129.

 To support a conviction for second-degree felony possession of marihuana, the State must
prove: (1) a person knowingly or intentionally, (2) possesses, (3) a useable quantity of marihuana,
more than five pounds and less than fifty pounds. Tex. Health & Safety Code Ann. § 481.121. 
The Texas Health and Safety Code defines "possession" as "actual care, custody, control, or
management." Tex. Health & Safety Code Ann. § 481.002 (Vernon 2003); Jones v. State, 963
S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd). To show possession, the State can use
direct or circumstantial evidence. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). 
Hennington concedes that the only element at issue was his knowledge of the marihuana. The Texas
Court of Criminal Appeals has held that "a person may not be convicted for possession of a
controlled substance unless it is proved that he possessed the substance 'intentionally or knowingly.'" 
Id. at 744. Mere possession of a vehicle containing contraband is not sufficient to sustain a
conviction. Jones, 963 S.W.2d at 830.

 In matters concerning credibility of witnesses, an appellate court "should not substantially
intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." 
Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Matters concerning an evaluation of
credibility and demeanor are the sole province of the jury. Cain v. State, 958 S.W.2d 404, 408-09
(Tex. Crim. App. 1997). Hennington denied knowledge he had marihuana in his vehicle. Jackson,
though, testified Hennington knew the marihuana was present. We must defer to the jury's
assessment of credibility. 

 In addition to Jackson's testimony, there are affirmative links between Hennington and the
marihuana. "In reviewing the sufficiency of the evidence to establish a defendant's knowledge of
and control over contraband, the existing body of law describing affirmative links between a
defendant and contraband is an appropriate means of determining legal and factual sufficiency of the
evidence on review." Green v. State, 892 S.W.2d 220, 222 (Tex. App.-Texarkana 1995, pet. ref'd);
see Villarreal v. State, 865 S.W.2d 501 (Tex. App.-Corpus Christi 1993, pet. ref'd). This Court has
held that factors which should be considered when evaluating whether an affirmative link exists are:

 1) the defendant's presence when the search was executed; 2) whether the contraband
was in plain view; 3) the defendant's proximity to and the accessibility of the
contraband; 4) whether the defendant was under the influence of a controlled
substance when arrested; 5) whether the defendant possessed other contraband when
arrested; 6) whether the defendant made incriminating statements when arrested; 7)
whether the defendant attempted to flee; 8) whether the defendant made furtive
gestures; 9) whether there was an odor of the contraband; 10) whether other
contraband or drug paraphernalia was present; 11) whether defendant owned or had
the right to possess the place where the drugs were found; and 12) whether the place
the drugs were found was enclosed. 


Jones, 963 S.W.2d at 830; see Chavez v. State, 769 S.W.2d 284, 288 (Tex. App.-Houston [1st Dist.]
1989, pet. ref'd). The affirmative link to the contraband does not need to exclude every other
reasonable hypothesis except the defendant's guilt. Brown, 911 S.W.2d at 748. 

 "The number of factors present is not as important as the degree to which the factors tend to
affirmatively link the accused to the contraband." Williams v. State, 906 S.W.2d 58, 65 (Tex.
App.-Tyler 1995, pet. ref'd). Hennington was the driver of the van and was present when Brown
discovered the marihuana. Hennington admitted having smoked marihuana in his car on the trip
from Dallas. Brown testified he noticed an odor of marihuana and fabric softener in the van. Brown
observed that Hennington appeared very nervous. Hennington's hands were shaking, and he avoided
eye contact. The marihuana was located in an enclosed van. Hennington acknowledged that the
marihuana was in "[his] automobile." Hennington obviously had the right to possess the place where
the marihuana was found. We hold that sufficient evidence exists to affirmatively link Hennington
to the marihuana.

 Based on Jackson's testimony and the above affirmative link analysis, a rational juror could
have found beyond a reasonable doubt that Hennington knew of the marihuana. Further, the verdict
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong, or so weak as
to be clearly wrong or manifestly unjust. Hennington's third point of error is overruled.


 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: July 10, 2003

Date Decided: July 18, 2003


Do Not Publish
1. The general rule that an appellate court should only consider the evidence adduced at the
suppression hearing is inapplicable when the suppression issue has been "consensually relitigated
by the parties during trial." Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); Herrera
v. State, 80 S.W.3d 283, 291 (Tex. App.-Texarkana 2002, pet. ref'd) (op. on reh'g). Because
reasonable suspicion was established at the suppression hearing, we will not decide whether the issue
was "consensually relitigated."
2. The record does not contain testimony at the suppression hearing regarding the conflict
between their stories. Hennington testified at trial that they were driving to Texarkana because the
passenger, Trina Jackson, was pregnant and wanted to visit her family. Jackson testified at trial that
they were headed to Tennessee for a drug run. However, the police report, admitted into evidence
for the pretrial hearing only, states that Hennington told Brown they were driving to Texarkana
because Jackson was pregnant and her boyfriend had left her, but Jackson had told the police they
were driving to Texarkana because her grandmother was sick. 
3. See Isam v. State, 582 S.W.2d 441, 444 (Tex. Crim. App. [Panel Op.] 1979). Further, we
note that the odor of marihuana, alone, has been held sufficient to establish probable cause to search
a vehicle. Marsh v. State, 684 S.W.2d 676, 679 (Tex. Crim. App. 1984); Small v. State, 977 S.W.2d
771 (Tex. App.-Fort Worth 1998, no pet.); Hernandez v. State, 867 S.W.2d 900, 907 (Tex.
App.-Texarkana 1993, no pet.).
4. Hennington argues his consent was not voluntary due to the illegal detention and comments
made by Brown. Hennington cites Herrera to address the issue of whether consent was sufficiently
purged of the taint from an unlawful detention to render the consent valid. Since we find the
detention lawful, this case is not relevant to our inquiry. 
5. See Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The State must show by
clear and convincing evidence that the consent given was voluntary and unequivocal. See State v.
Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (Mansfield, J., concurring). Whether the
consent to search was in fact voluntary must be determined from the totality of the circumstances. 
Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Reasor, 12 S.W.3d at 818. 
6. Lopez v. State, 960 S.W.2d 948, 951 (Tex. App.-Houston [1st Dist.] 1998, pet. ref'd)
(presence and other suspicious circumstances); see also Dowthitt v. State, 931 S.W.2d 244, 250 (Tex.
Crim. App. 1996) (blood spatters on clothing); Burks v. State, 876 S.W.2d 877, 888 (Tex. Crim.
App. 1994) (flight); Gill v. State, 873 S.W.2d 45, 49 (Tex. Crim. App. 1994) (possession of stolen
property); Richardson v. State, 879 S.W.2d 874, 880 (Tex. Crim. App. 1993) (motive and ownership
of Uzi); Reed v. State, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988) (recognition of body and
discrepancies in story); Brown v. State, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) (appearing to
panic, driving away from police, and other suspicious circumstances); Spratt v. State, 881 S.W.2d
65 (Tex. App.-El Paso 1994, no pet.) (furtive gestures, presence, and other suspicious
circumstances). 
7. Brown, 672 S.W.2d at 489 (appearing to panic); see also Spratt, 881 S.W.2d at 67 (nervous
furtive gestures); Hill v. State, 832 S.W.2d 724, 726 (Tex. App.-Houston [1st Dist.] 1992, no pet.)
(furtive behavior); De La Rosa v. State, 771 S.W.2d 170, 172-73 (Tex. App.-Austin 1989, no pet.)
(nervous behavior). 
8. Hennington referred to the van as "his van." He appears to have exercised exclusive control
over the van, even though there is some indication it belonged to a relative.
9. Underwood v. State, 967 S.W.2d 925, 929 (Tex. App.-Beaumont 1998, pet. ref'd) (fact that
the defendant was the driver and other suspicious circumstances); Young v. State, 842 S.W.2d 364,
365 (Tex. App.-Eastland 1992, no pet.) (fact that the defendant drove accomplice's car and other
suspicious circumstances). But cf. Abu-Shabaam v. State, 848 S.W.2d 782 (Tex. App.-Houston
[14th Dist.]) (driver who did not own the car and no other suspicious circumstances), vacated on
other grounds, 856 S.W.2d 436 (Tex. Crim. App. 1993), distinguished by Underwood, 967 S.W.2d
at 929-30.