COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JOSE LUIS MORA,                                         )                  No. 08-04-00090-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  143rd District Court
)
THE STATE OF TEXAS,                                   )                  of Reeves County, Texas
)
                                    Appellee.                          )                  (TC# 02-06-06647-CRR) 


O P I N I O N


            Jose Luis Mora appeals his conviction for possession of marijuana in an amount over fifty
pounds but less than two thousand pounds. A jury found Appellant guilty and sentenced him to
twelve years in the Texas Department of Criminal Justice--Institutional Division, together with a fine
of $3,000. Finding no error, we affirm.
FACTUAL SUMMARY
            On May 10, 2002, Pecos Police Officer Kevin Roberts was working Interstate 20 in Reeves
County as part of the Trans Pecos Drug Task Force. Around 10:30 that morning, Roberts observed
a red 1993 Chevrolet Beretta traveling eastbound at 78 miles per hour in a 75 mile per hour zone. 
Roberts initiated a traffic stop and found two occupants in the vehicle. The driver was identified as
Stanley Michael Drennon. The passenger sitting in the front seat was identified as Appellant. 
            After asking for identification, Roberts requested proof of insurance. Drennon stated he did
not have his insurance but did have registration for the car. The car was registered to Ivonne Perez
Sanchez. Roberts then requested that Drennon step to the rear of the vehicle and he asked who
owned the vehicle. Drennon responded that he had recently purchased the car from a neighbor in
El Paso for $2,100. Roberts then asked Drennon where he and Appellant were heading. Drennon
told him they were traveling to Odessa to visit friends for a few days. Drennon was then directed
to stay in front of the patrol car while Roberts spoke with Appellant. 
            Roberts asked Appellant the same questions. Appellant said that the car belonged to his aunt. 
But when Roberts asked her name, Appellant paused, tilted his head back, rolled his eyes like he was
thinking, and finally said her name was Mrs. Perez. Appellant explained that he and Drennon were
going to Odessa to look at cars with friends for a few hours. Appellant had known Drennon for four
to five months. Appellant did not appear not overly nervous during the questioning and was
cooperative.
            Roberts then returned to speak to Drennon and again asked who owned the vehicle. Drennon
insisted he had purchased the car for $2,100. He claimed he had known Appellant for several years. 
After speaking once again to Appellant, Appellant said he planned to sell his aunt’s car to Drennon
for $1,600. 
            After receiving these conflicting stories, Roberts ran their licenses. Roberts approached
Drennon and explained that his job was highway interdiction--recovering stolen property, weapons,
large sums of money, and drugs. He asked Drennon whether he had any of those items in the car. 
When Drennon answered no, Roberts asked for permission to search the vehicle. Drennon gave
consent. Roberts did not ask Appellant since Drennon claimed he had purchased the vehicle,
Drennon was the driver of the vehicle, and Drennon had care, custody, and control of the vehicle at
the time of the stop.
            Roberts asked Appellant to exit the vehicle and started his search on the front passenger’s
side. In examining the plastic trim running along the bottom where the carpet tucks into the
floorboard, Roberts noticed that there was no dirt or debris in the screws, which he would expect in 
a vehicle of such poor condition. He also noticed that the screws had fresh tool marks like someone
used a screwdriver to remove them, and the carpet looked fairly new. In inspecting the anchor bolts
under the seats, Roberts found they were new and extended two to three inches higher than normal. 
            Roberts then stepped back to examine the floorboard and found it went straight across. The
seats were set too high for the console and the driving pedals. When Roberts hit the floorboard with
his baton, he found that it had a lot of give instead of being solid. Roberts then asked Drennon again
whether there was anything in the vehicle. Roberts wanted to take the car into town to continue his
investigation and Drennon and Appellant said they would be willing to go. Roberts told them that
for purposes of officer safety, they were not to use a cell phone. But when he turned around, one of
them already had a cell phone in his hand. Since Roberts knew that sometimes chase vehicles
followed, he believed it was necessary to pull up the floorboard at the scene. He discovered
numerous bricks wrapped in cellophane and red axle grease, and Drennon and Appellant were
arrested. Roberts placed one brick on the hood of the patrol car in the presence of Appellant. 
Appellant did not show surprise nor did he deny knowing about the marijuana. 
            Once the seats, carpet, and padding were fully removed at the sheriff’s office, Roberts
recovered sixty-one bricks of marijuana and axle grease, which is frequently used as a masking
agent. By this time, Drennon and Appellant had been booked into the Reeves County Jail and
Roberts went to speak with them. Of significance to this appeal is a statement Appellant made to
him during this visit. Appellant said that he worked for a large organization out of Mexico and could
give him load information and vehicle description for vehicles coming through with loads of
narcotics. 
            At trial, Drennon testified that he met Appellant when working at the Valley Lodge in El
Paso. The pair were on their way to Oklahoma to deliver marijuana when they were pulled over in
Reeves County. The plan was initiated when Appellant told Drennon to pick up the car with
marijuana in it at the motel approximately a week before the trip. Appellant did not know who
dropped off the car. Appellant asked Drennon to drive the car to Oklahoma. Originally, Drennon
was to make the drive alone, but at the last minute Appellant wanted to accompany him. They were
to split $3,000 for making the run. Appellant knew there was marijuana in the car and that once they
arrived in Oklahoma, they were to leave the car in a motel parking lot and call someone to pick it
up. Neither man had brought luggage along since they were to fly back to El Paso immediately after
the drop.
ADMISSION OF MEXICAN CONNECTION
            In Point of Error Two, Appellant complains of the admission of his statement regarding his
involvement in a Mexican drug organization. Generally, a trial court has broad discretion in
determining the admissibility of evidence, and the reviewing court should not reverse unless a clear
abuse of discretion is shown. Allridge v. State, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991), cert.
denied, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). As long as the trial court’s ruling was
at least within the zone of reasonable disagreement, we should not reverse. Montgomery v. State,
810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh’g).
            When the State inquired about the conversation between Roberts and Appellant, defense
counsel objected on hearsay grounds. During a hearing outside the presence of the jury, Appellant
again objected that the statement was hearsay and added that the probative value of the testimony
did not outweigh its prejudicial effect. The judge found that the testimony was relevant to
Appellant’s mens rea and to his guilty knowledge of possession of marijuana. The judge also found
the statement was an admission against interest.
            Relevant evidence may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of
undue delay, or needless presentation of cumulative evidence. Tex.R.Evid. 403. In conducting a
balancing test, the trial court must weigh the testimony’s probativeness to see if it was substantially
outweighed by the potential for unfair prejudice. See Santellan v. State, 939 S.W.2d 155, 169
(Tex.Crim.App.1997); Massey v. State, 933 S.W.2d 582, 586 (Tex.App.--Houston [1st Dist.] 1996,
no pet.). Factors to be considered include (1) the evidence’s inherent probative value, (2) its
potential to impress the jury in some irrational but indelible way, (3) the amount of trial time the
proponent needs to develop such evidence, and (4) the proponent’s need for the evidence. 
Montgomery, 810 S.W.2d at 389-90.
            The first factor looks to probativeness, or how compelling the evidence serves to make a fact
of consequence more or less probable. State v. Mechler, 153 S.W.3d 435, 440 (Tex.Crim.App.
2005). There is a presumption that relevant evidence is more probative than prejudicial. Santellan,
939 S.W.2d at 169. Although Appellant asserts that the testimony was irrelevant and lacked
probative value as to whether he possessed the marijuana, his affiliation with a Mexican narcotics
organization is relevant as to whether he knew the marijuana was concealed in the car. It also
demonstrates motive and intent. 
            The second factor asks whether the evidence has a potential to impress the jury in some
irrational but indelible way. Mechler, 153 S.W.3d at 441. Rule 403 does not exclude all prejudicial
evidence; rather, it focuses only on the danger of “unfair” prejudice. Id. Unfair prejudice pertains
only to relevant evidence’s tendency to tempt the jury into finding guilt on grounds apart from proof
of the offense charged. Id. Appellant argues that the testimony constituted highly prejudicial
character conformity evidence and resulted in the jury’s rejection of his defense that he knew nothing
about the marijuana.
            The potential improper basis would be the use of affiliation with the narcotics organization
to show that Appellant was a bad person and that he acted in conformity with his bad character. See
Vasquez v. State, 67 S.W.3d 229, 240 (Tex.Crim.App. 2002). However, there is no indication that
the testimony had the potential to impress the jury in some irrational but indelible way or would
cause “unfair” prejudice.
            The third factor concerns the time the proponent will need to develop the evidence, during
which the jury will be distracted from consideration of the indicted offense. Mechler, 153 S.W.3d
at 441. Appellant contends that the trial was lengthened by admission of the testimony since a
hearing had to be held outside the presence of the jury which distracted the jury. 
            Appellant objected to the elicitation of testimony from Officer Roberts and requested a
hearing outside the presence of the jury. The trial court then dismissed the jury for lunch and held
the hearing. After the jury returned, the State quickly elicited the testimony from the witness without
taking needless time to develop the testimony. There is no indication that the testimony distracted
the jury in any way from the indicted offense.
            In determining need, the trial court examines the availability of other evidence to establish
the particular fact of consequence, the strength of that other evidence, and whether the fact of
consequence is related to an issue in dispute. Montgomery, 810 S.W.2d at 389-90. Appellant
complains that the State had no need for the evidence since it offered the accomplice testimony of
Drennon and the testimony did not corroborate Drennon’s testimony.
            Contrary to Appellant’s contentions, the State needed the evidence to establish intent and
motive and to show that Appellant had knowledge of the presence of the marijuana in the car. The
testimony is corroborating in that it tends to connect Appellant to the offense. After evaluating all
these factors, we conclude they weigh in favor of admissibility. We find no abuse of discretion in
the admission of testimony regarding Appellant’s affiliation with a Mexican drug organization. 
Point of Error Two is overruled.
CORROBORATION OF ACCOMPLICE TESTIMONY
            In Point of Error One, Appellant argues that his conviction cannot stand since the State failed
to corroborate the accomplice testimony of Drennon. Appellant asserts that the non-accomplice
testimony merely establishes that he was seated in the front passenger compartment of the vehicle
where the marijuana was found. He claims that the State failed to prove he exercised care, control,
and management over the drugs and knew that the matter possessed was drugs.
            A person commits the offense of possession of marijuana if that person knowingly or
intentionally possesses a usable quantity of marijuana. Tex.Health & Safety Code Ann.
§ 481.121(a)(Vernon 2003). The offense is a second degree felony if the amount of marijuana
possessed is 2,000 pounds or less but more than fifty pounds. Tex.Health & Safety Code Ann.
§ 481.121(b)(5). Here, Appellant was convicted of second degree felony possession of marijuana. 
At trial, Drennon, an accomplice to the crime, testified for the State. 
            A conviction cannot be had upon the testimony of an accomplice unless corroborated by
other evidence tending to connect the defendant with the offense committed; and the corroboration
is not sufficient if it merely shows the commission of the offense. Tex.Code Crim.Proc.Ann.
art. 38.14 (Vernon 2005). We must eliminate from our sufficiency consideration the evidence
offered by the accomplice and examine the other evidence to determine if there is incriminating
evidence which tends to connect Appellant to the commission of the offense. Hernandez v. State,
939 S.W.2d 173, 176 (Tex.Crim.App. 1997). It is not necessary that the corroborating evidence
directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need
only tend to connect the defendant to the offense. Cathey v. State, 992 S.W.2d 460, 462
(Tex.Crim.App. 1999), cert. denied, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000); Reed
v. State, 744 S.W.2d 112, 126 (Tex.Crim.App. 1988). If the combined weight of the non-accomplice
evidence tends to connect the defendant to the offense, the requirement of article 38.14 has been
fulfilled. Cathey, 992 S.W.2d at 462; Gosch v. State, 829 S.W.2d 775, 777 (Tex.Crim.App. 1991),
cert. denied, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). 
            The mere presence of an accused in the company of the accomplice during the commission
of the crime is not, by itself, sufficient to corroborate accomplice testimony. See Dowthitt v. State,
931 S.W.2d 244, 249 (Tex.Crim.App. 1996); Cox v. State, 830 S.W.2d 609, 611 (Tex.Crim.App.
1992). However, proof that an accused was at or near the place where the crime occurred at or about
the time that it happened, along with evidence of other circumstances, can be sufficient
corroboration. Cox, 830 S.W.2d at 611. Other circumstances which, when coupled with the
presence of the defendant, have been found to constitute sufficient corroborating evidence, include
a defendant’s furtive behavior and flight from the scene. See Spratt v. State, 881 S.W.2d 65, 67
(Tex.App.--El Paso 1994, no pet.); Passmore v. State, 617 S.W.2d 682, 684-85 (Tex.Crim.App.
1981), overruled on other grounds, Reed v. State, 744 S.W.2d 112 (Tex.Crim.App. 1988). 
            Appellant was a passenger in the car where the marijuana was found. In fact, marijuana was
hidden under the carpet of the front passenger seat floorboard where Appellant was seated. Although
Appellant was cooperative and not overly nervous, when asked where he and Drennon were going,
he gave a story that was inconsistent with Drennon’s. Appellant claimed that his aunt owned the car
and he was planning to sell it to Drennon even though Drennon told Roberts he purchased the car
from a neighbor. 
            When confronted with the marijuana, Appellant showed no surprise. After his arrest, he told
Roberts that he was affiliated with a Mexican drug organization and could provide load and vehicle
information. Even if the non-accomplice evidence would be insufficient by itself to establish
Appellant’s guilt, it need only tend to connect Appellant to the offense, which it does. Point of Error
One is overruled.
IMPROPER PROSECUTORIAL COMMENTS 
            In Point of Error Three, Appellant alleges that the prosecutor committed reversible error
during closing argument of the punishment phase by arguing that Appellant had received two ten
year sentences when he had in fact received only a probated sentence and deferred adjudication. He
contends that the argument was not a reasonable deduction from the evidence.
            In order to preserve a complaint regarding the prosecutor’s jury argument, the defendant must
timely object at trial. See Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App.1996), cert. denied,
520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997); Nixon v. State, 940 S.W.2d 687, 693
(Tex.App.--El Paso 1996, pet. ref’d). This timely objection requirement applies to every type of
improper argument. See Cockrell, 933 S.W.2d at 89; Campos v. State, 946 S.W.2d 414, 416-18
(Tex.App.--Houston [14th Dist.] 1997, no pet.). 
            Here, Appellant failed to timely object. At the beginning of the prosecutor’s argument he
mentioned that Appellant had two ten-year sentences before the sentence today without objection
from Appellant. The prosecutor then explained the two exhibits admitted dealing with Appellant’s
prior convictions. Only after the prosecutor explained why he was seeking a twelve-year sentence
did Appellant object. Accordingly, Appellant failed to properly preserve error for our review. We
overrule Point of Error Three and affirm the judgment of the trial court.


August 25, 2005                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)