Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## MEMORANDUM OPINION

No. 04-10-00776-CR

Valentin **SUNIGA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-0755C
Honorable Mary D. Roman, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:   October 19, 2011

AFFIRMED

Valentin Suniga appeals his conviction on five counts of aggravated robbery, challenging the sufficiency of the evidence to corroborate accomplice witness testimony and to support his conviction as a party to the offense. We affirm the trial court's judgment.

### BACKGROUND

This case arises out of the same November 1, 2008 robbery at Metro News Service, a telemarketing business in San Antonio, that formed the basis of a prior appeal decided by this

court. *See Soliz v. State*, No. 04-10-00087-CR, 2011 WL 193469 (Tex. App.—San Antonio Jan. 19, 2011, no pet.) (mem. op., not designated for publication). The robbery occurred on a Saturday afternoon when three masked men entered the business and demanded cash, jewelry, and cell phones from the employees; one man held a shotgun and another held a knife. All of the victims recognized the man holding the shotgun as their co-worker, Darrell Johnson, based on his voice, mannerisms, and shoes. The robbers fled in a green Volvo sedan that was waiting in the back alley; some of the victims chased the Volvo and reported seeing four people inside the car as it drove away. Shortly after the robbery, the police arrested Johnson, who confessed and showed the police where the men left the Volvo and where they pawned the stolen jewelry. The police subsequently arrested Suniga and two other men, Jonathan Perez and Roger Soliz, in connection with the robbery. Suniga was indicted on five counts of aggravated robbery with a deadly weapon (repeater). Following a jury trial, Suniga was convicted as a party on all five counts of aggravated robbery. He was sentenced to thirty (30) years' imprisonment and assessed a fine of $1,000 on each count, concurrently. Suniga now appeals.[1]

## ANALYSIS

On appeal, Suniga raises the following evidentiary challenges to the jury's verdict: (1) the testimony of an accomplice was not corroborated by sufficient independent evidence; and (2) the evidence is legally insufficient to support his conviction of the offense as a party because there is no evidence that he solicited, encouraged, directed, aided or attempted to aid another in (i) the commission of the robbery, and (ii) the use or exhibition of a deadly weapon during the robbery. We will first address the issue concerning corroboration of the accomplice witness testimony in order to determine whether it may be considered within the legal sufficiency analysis.

---

[1] A more detailed discussion of the facts surrounding commission of the aggravated robbery is set forth in our prior opinion. *See Soliz*, 2011 WL 193469, at *1-2. Rather than restating the same factual summary here, we will discuss the facts as they relate to each of Suniga's appellate issues.

*Accomplice Witness Testimony*

At trial, Jonathan Perez testified to his role in the aggravated robbery as supplying the shotgun and participating in the robbery inside the business; he incriminated Suniga as the getaway driver for the robbery and the person who pawned some of the stolen jewelry. Perez acknowledged that he entered into a plea agreement with the State in exchange for his trial testimony. The jury was properly instructed that Perez was an accomplice witness, and that it could not convict Suniga on the basis of Perez's testimony, even if found to be credible, unless the testimony was corroborated by other evidence tending to connect Suniga with the commission of the aggravated robbery. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (an accomplice is a person who participated with the defendant before, during, or after the commission of the crime and acted with the required culpable mental state); *see also Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (an accomplice as a matter of law is a person susceptible to prosecution for the offense with which the defendant is charged or a lesser included offense). Under article 38.14 of the Code of Criminal Procedure, a conviction cannot be upheld on the basis of accomplice testimony unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). The corroborating evidence is not sufficient if it merely proves the commission of the offense; the jury was so instructed. *Id.*; *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).

In reviewing the sufficiency of the corroborating evidence in the record, we exclude the accomplice testimony from our consideration and focus on the remainder of the record to determine whether there is any independent evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001);

*Cathey*, 992 S.W.2d at 462-63 (appellate courts should not apply legal sufficiency standard to statutorily based review of accomplice-witness testimony). When reviewing the evidence, we view it in the light most favorable to the jury's verdict. *Brown*, 270 S.W.3d at 567. The corroborating evidence may be direct or circumstantial, and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). While a defendant's mere presence at the scene of the crime is, by itself, insufficient corroboration, the defendant's presence combined with other suspicious circumstances may be sufficient to tend to connect the defendant to the crime. *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992); *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Likewise, evidence that the defendant was in the presence of an accomplice at or near the time or place of the crime is proper corroborating evidence. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997).

On appeal, Suniga asserts the independent evidence corroborating Perez's testimony is not sufficient because it merely proves that the aggravated robbery was committed, and does not tend to connect Suniga to commission of the crime. *See Cathey*, 992 S.W.2d at 462. We disagree. Our review of the record shows the following non-accomplice evidence connecting Suniga to commission of the aggravated robbery: (1) Suniga admitted he is the owner of the green Volvo sedan used as the getaway car, and Suniga's fingerprints were found on the rearview mirror when the car was found that evening, which could support an inference that Suniga was in the driver's seat during the afternoon robbery; (2) two of the victims, Albert Martinez and Kim Ryle, testified there were three robbers but they saw four people inside the green Volvo as it fled after the robbery; (3) within twenty minutes after the robbery, a video

camera at the El Buffalo Pawn Shop showed Suniga driving the green Volvo as it pulled up at the pawn shop and showed Suniga in the company of Johnson, Perez, and Soliz inside the pawn shop; (4) the pawn shop clerk, Hollyann Moncado, testified that Suniga removed three rings from his fingers to pawn, stating the rings had sentimental value and belonged to his uncle—they were later discovered to have been stolen during the Metro News robbery; (5) Detective David Lozano testified that he drove the route between Metro News and the El Buffalo Pawn Shop and it took him 18 minutes and 29 seconds, which falls within the twenty-minute period between the 1:21 p.m. dispatch call for the robbery and the video of Suniga entering the pawn shop; and (6) police discovered the green Volvo later that same evening parked behind a gate in the backyard of Soliz's mother's house (who is Suniga's aunt), and recovered stolen items from inside the car.

We conclude the combined weight of this non-accomplice evidence sufficiently tends to connect Suniga to commission of the aggravated robbery. *See Gosch*, 829 S.W.2d at 777; *see also Barrera v. State*, 321 S.W.3d 137, 148 (Tex. App.—San Antonio 2010, pet. ref'd). The use of Suniga's Volvo as the getaway vehicle and the testimony that a fourth person was driving as it fled, combined with Suniga's presence with the three robbers and his possession of stolen jewelry at the pawn shop exactly twenty minutes after the robbery tends to connect Suniga to the commission of the robbery. *See Cox*, 830 S.W.2d at 611; *McDuff*, 939 S.W.2d at 612. We hold that Perez's accomplice testimony was sufficiently corroborated by this independent evidence which tends to connect Suniga to commission of the offense.

### *Legal Sufficiency – Liability as a Party*

Having concluded that there is sufficient independent evidence corroborating Perez's accomplice witness testimony, we next proceed to evaluate the legal sufficiency of all the evidence, including Perez's testimony, to support Suniga's conviction as a party. In challenging

the legal sufficiency of the evidence to support his conviction of aggravated robbery as a party, Suniga asserts (i) there is no evidence that he acted with intent to promote or assist the commission of the robbery, and (ii) there is no evidence that he knew a deadly weapon would be used or exhibited during the robbery. In reviewing legal sufficiency, we consider all the evidence, both direct and circumstantial, in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). It is the jury's role to resolve conflicts in the testimony, assess credibility and weigh the evidence, and draw reasonable inferences from the basic facts to the ultimate facts. *Brooks*, 323 S.W.3d at 899. In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Id.* The appellate court may not substitute its own judgment for that of the jury. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, we must resolve any inconsistencies in the evidence in favor of the jury's verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

As applied to this case, the elements of aggravated robbery are: (1) a person (2) in the course of committing theft (3) with intent to obtain or maintain control of property (4) intentionally or knowingly (5) threatens or places another in fear of imminent bodily injury or death, and (6) uses or exhibits a deadly weapon, to-wit: a firearm. TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (West 2011) (person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon). The jury was instructed that it could convict Suniga of aggravated robbery under the law of parties. A person may be convicted as a party if the offense is committed by the conduct of another for which he is criminally responsible. TEX.

PENAL CODE ANN. § 7.01(a) (West 2011). A person is criminally responsible for the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. . . ." *Id.* § 7.02(a)(2) (West 2011). Mere presence of a person at the scene of a crime either before, during or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence it may be sufficient to sustain a conviction. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985). In determining whether a defendant participated as a party in the commission of an offense, the jury may consider events that occurred before, during, or after the offense, and may rely on acts that show an understanding and common design. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (opin. on reh'g); *Barnes v. State*, 56 S.W.3d 221, 238 (Tex. App.—Fort Worth 2001, pet. ref'd) (agreement to act together in a common design is seldom proven by direct evidence, but by circumstantial evidence).

Suniga's argument that there is no evidence he intended to assist in commission of the aggravated robbery depends in large part on the exclusion of Perez's accomplice witness testimony. We have already found that Perez's testimony was sufficiently corroborated by other independent evidence, and thus we may consider his testimony in our sufficiency review. Perez testified that Suniga, Johnson, and Soliz came over to his friend's house on the morning of the robbery and borrowed a shotgun because they were going to "collect money;" Suniga was driving the green Volvo. Perez joined the group in the Volvo to make sure the shotgun was returned to his friend. At one point while they were driving around, Perez overheard Soliz tell Suniga, "Let's hit this store," and Suniga responded, "You are acting crazy. We aren't going to hit that store; that dude has a gun . . . there's too many people there all the time, let's not hit that

store." A while later, while still driving around in the car, Perez heard Johnson say, "Let's hit the Metro . . . I've got it laced up. . . They're getting their check stubs today and it's pay day . . . they should have already gone to lunch already and cashed their checks at the bank right across the way and they will already have the money." Perez then noticed the Volvo turning into a back alley behind a store building and stopping in front of a back door. Suniga stated that he could not go into the store because he was not properly dressed; he had on a bright colored Polo shirt with jeans and Polo boots. Soliz asked Suniga to swap shoes with him because Soliz's shoes were brightly colored, and Suniga gave Soliz his boots to wear. They asked Perez if he would go in with them because they needed an extra person to "show that we got people;" Perez was reluctant because he had thought they were only going to collect some money, but he went into the store with Johnson and Soliz. Before they got out of the car, Johnson explained the floor plan of the store and instructed Soliz to go straight to the front door and lock it, and Perez to stand at the back door; Johnson picked up the gun before getting out of the car. Suniga waited in the Volvo which was parked within feet of the back door. During the robbery, Johnson "had everybody at gunpoint." When they exited the store, the car was right there with the door open. Suniga drove them away from the store in the Volvo. As discussed, *supra*, there is evidence that Suniga drove directly to the El Buffalo Pawn Shop and himself pawned some jewelry obtained in the robbery.

In addition, as noted *supra*, there is other circumstantial evidence supporting a finding that Suniga was the getaway driver for the robbery—he admitted ownership of the Volvo, his fingerprints were found that day on the rearview mirror, two victims saw a fourth person in the Volvo as it drove away from the back alley, the pawn shop video showed Suniga driving the Volvo and in the presence of the three robbers twenty minutes after the robbery, and the Volvo

was found with stolen items inside and concealed in the backyard of Suniga's aunt's house later that same day. We conclude the evidence is legally sufficient to prove Suniga was aware of the plan to rob the Metro News store and intended to promote and assist in the robbery.

Finally, Suniga argues the evidence is insufficient to hold him criminally responsible for the aggravating element of use of the gun. Specifically, Suniga contends there is no evidence he knew that a firearm would be used or exhibited during the robbery. We disagree. Perez testified that while the four men were driving around in the Volvo, Johnson pulled out the shotgun from his pants leg and Perez showed him how to use it. Perez stated that at one point, Suniga, who was driving, said, "Hey, don't point that like that." Perez said the gun was not loaded, and Suniga replied there could be a bullet in the chamber and to put it down. When the three men exited the Volvo, Johnson took the shotgun with him inside the store. There is legally sufficient evidence that Suniga knew that Johnson had a shotgun and intended to use or exhibit it during the robbery—Perez stated Suniga was driving the Volvo when they went to borrow the shotgun, the gun was in plain view inside the car while Suniga was driving and Suniga told Perez not to point the gun inside the car, "hitting" a store was discussed inside the car with Suniga participating in the conversation, and Johnson took the shotgun when he got out at the Metro News office. We conclude the evidence is legally sufficient to support the jury's finding on the aggravating element of use of a deadly weapon.

### *Conclusion*

Based on the foregoing analysis, we hold there is sufficient independent evidence to corroborate Perez's accomplice testimony and the evidence is legally sufficient to support the jury's finding that Suniga intended to promote or assist in the commission of the aggravated

robbery with the use or exhibition of a deadly weapon.  We therefore overrule Suniga's issues on appeal, and affirm the trial court's judgment.

Phylis J. Speedlin, Justice

DO NOT PUBLISH